In this gas explosion case, Raymond Bo-rel appeals from a judgment dismissing his personal injury claims against New Orleans Public Service, Inc. (NOPSI) and the City of New Orleans. The basis of plaintiff’s claim is that defendants failed to rectify a dangerous, uncapped gas line in the residential premises. Because we conclude that defendants were not negligent and that plaintiff’s fault caused the explosion, we affirm.
On the evening of August 26, 1984, Raymond Borel was burned in an explosion and fire in his rented apartment at 3134 Burgundy Street in New Orleans. Natural gas escaping through a partially opened lever valve on an uncapped gas line in the bathroom exploded when Borel lit a cigarette while soaking in his bathtub.
Borel filed suit against NOPSI and the City, alleging that defendants had inspected the premises before the accident, but had failed to detect and correct the uncapped gas line.[1] After trial on the merits, the trial judge dismissed plaintiff’s claims. In written reasons, the judge stated in pertinent part:
“There is no direct evidence indicating how the gas jet was turned on. Under all the circumstances of this case, the court finds that the negligence, if any, of the Public Service was not a cause and fact of this accident. The court finds no negligence on the City of New Orleans.”
Appealing, Borel contends that both NOPSI and the City breached their duties to inspect his residence carefully to make sure that the gas installations were in safe operating conditions. In this regard, plaintiff points out that despite visiting the premises on several occasions, City build *435 ing inspectors failed to note the uncapped gas line as a violation of the City Code’s requirements for safe heating and plumbing installations, including a specific article which provides that gas piping outlets or connections "... shall be capped or plugged when said outlet or connection is not connected to an appliance.” Plaintiff further argues that NOPSI, as the provider of the dangerous instrumentality of natural gas, had assumed the high duty of determining unsafe conditions in the gas lines through a company policy of having its servicemen enter premises and check for uncapped gas lines upon establishing service to a new resident. According to Borel, had the City and NOPSI’s employees discharged their duties properly, the hazardous gas line in his bathroom could have been corrected and the explosion prevented.
The trial judge was confronted with conflicting versions of the events leading to the explosion. According to Borel, though he had removed caps from two gas lines in other rooms of his apartment to install space heaters, he did not install a heater in the bathroom and the line in that room had never been capped. Borel testified that a NOPSI serviceman who turned on the gas at the premises in early December, 1982 had looked in the bathroom, and that City building inspectors had also examined the interior of the apartment on three or four occasions in the ensuing months without mentioning the uncapped lines.
In contrast to Borel’s testimony, NOPSI’s records indicated that gas service had already been furnished to the apart ment in early December, 1982, when Borel moved into the apartment. According to the report of Arthur Sutton, a NOPSI serviceman, no one was home when he called at Borel’s apartment and he simply read the gas meter on the exterior of the house before leaving the premises pursuant to NOPSI’s company policy. Sutton testified that if someone had answered at the apartment he would have checked all the gas outlets to make sure they were safe and would have documented it on the back of his service form.
Inspectors from the City examined the interior of Borel’s apartment in February and September, 1983 and again in April, 1984 concerning prior complaints unrelated to the gas line. Emmanuel Joseph Talluto, a housing code enforcement inspector, did not remember seeing an uncapped line in the premises during his inspection on February 9, 1983, and further testified that he would have noted and reported it to his supervisor if he had discovered it. Another housing inspector, Jerome Ballero, testified that he had gone to the premises twice, but he did not recall seeing an uncapped gas line in the bathroom. Ballero likewise stated that if the line had been uncapped and nothing had blocked his view of it, he would have noted it in his report and brought it to the attention of his supervisor. He did not find such a situation on his two visits.
Raymond Crochet, Sr., Borel’s former landlord, testified that he had furnished no heating devices for the apartment and that his practice in his rental units was to cap any exposed gas pipes. Although Crochet did not. inspect Borel’s apartment when plaintiff first moved in, Crochet testified that he believes his son and his work crew, who cleaned the house, would have capped the gas line even with the cock valve on it.
Although Borel testified that the uncapped line rose three to four inches from the floor near the bathtub and was in plain view in the bathroom when NOPSI and City employees inspected the premises, he stated that three to four weeks before the accident he had placed a dresser or vanity in the small bathroom. The rear leg of this piece of furniture was in close proximity to the lever valve on the gas line, and upon moving it into the room, Borel accidentally bumped the lever valve open but immediately shut it off. Borel further testified that he opened and shut drawers on the dresser when using it before the accident, and that the bathroom door also came into contact with this article of furniture.
An investigator who inspected the premises forty minutes after the fire was extinguished was of the opinion that the cause of the fire was the accidental release of *436 natural gas. He found the left rear leg of the dresser in the bathroom in contact with the gas lever valve. A field supervisor for NOPSI also testified that the gas was properly odorized on the date of the accident, but Borel stated that he had a nasal condition and did not smell the gas before the explosion. An empty alcoholic beverage bottle was also found in the debris, and Borel testified that he had consumed three alcoholic drinks on the night of the exposion, though he denied that he was intoxicated at the time of the accident.
We recognize that explosive natural gas is a dangerous instrumentality and that those who handle and distribute it have a duty, commensurate with the hazardous character of this product, to protect the public from foreseeable injury. Reggio v. Louisiana Gas Service Company, 333 So. 2d 395 (La.App. 4th Cir.1976), writ denied 337 So. 2d 187 (La.1976). Clearly, an uncapped gas line with a lever valve is a dangerous condition that can foreseeably result in injury if the lever is accidentally turned to the open position allowing gas to escape. However, when we consider the evidence in the instant case, we find no error in the trial court’s judgment exonerating NOPSI and the City.
Although he did not so state in his reasons for judgment, a reasonable conclusion can be made that the trial judge rejected Borel’s testimony and believed NOPSI’s version that gas service was already in effect when Borel moved into the apartment and that the NOPSI serviceman was unable to inspect the interior of the residence because no one was home.
Concerning the question of the City's liability, the trial judge could have reasonably concluded that the bathroom gas line was either capped or obscured since the inspectors did not recall seeing an uncapped line. In this connection, they testified that they would have noted it in their reports if they had observed such a condition. We cannot say such findings based on reasonable evaluations of the conflicting evidence would be clearly wrong.
Furthermore, even assuming, without concluding, that NOPSI and the City breached duties owed to plaintiff to discover and correct the uncapped gas line in his bathroom, the trial court could still have exonerated both defendants under the circumstances of this case. Defendants’ duties were to detect the dangerous gas outlet and alert plaintiff so that the uncapped line could be corrected. Borel testified, however, that he was aware of the uncapped line from the time he moved into the apartment. Indeed, within a month before the explosion he had moved a piece of furniture into the bathroom, knocked the valve into the open position, and shut it off. Despite knowing that the gas line was uncapped and that gas would escape from an open valve, Borel allowed the dresser to remain in the bathroom, even though its rear leg was almost touching the lever. Furthermore, the dresser was discovered in contact with the open lever after the explosion, furnishing strong circumstantial evidence it had been bumped into the gas valve once again. Thus, we are not confronted in this case with a latent defect or trap that caught plaintiff without warning. The evidence, therefore, supports a reasonable conclusion that Borel’s own fault caused the accident and that defendants’ failure to see the uncapped line, if any, was not a cause of the explosion under these circumstances.
Accordingly, the judgment is affirmed.
AFFIRMED.

. Borel settled his claims against his former landlord and the subsequent owner of the premises, and proceeded to trial against NOPSI and the City.